Elsie Finch et al., Respondents, *v.* David Goldstein, Appellant.

**Incompetent persons — vendor and purchaser — real property — mortgage — foreclosure — acts of incompetent person before appointment of committee voidable, not void — action by committee to foreclose purchase-money mortgage on land conveyed by incompetent before he was so adjudged — defense of insanity insufficient.**

1. The acts of a person of unsound mind before the appointment of a committee are voidable, not void. If as a fact he be incompetent at the time he acts, his transactions may be set aside at his election either by himself or by a committee when appointed. The inquisition resulting in the appointment of a committee under the provisions of the Civil Practice Act and not a commitment of the person under the Insanity Law determines the question of incompetency. (*Blinn* v. *Schwarz*, 177 N. Y. 252; *Smith* v. *Ryan*, 191 N. Y. 452, explained and followed; *Sporza* v. *German Savings Bank*, 192 N. Y. 8, distinguished.)

2. In an action by the committee of an incompetent person to foreclose a purchase-money mortgage on land sold by the incompetent prior to the inquisition wherein he was adjudged incapable of handling his property, a defense that the incompetent was insane at the time of the conveyance is insufficient and a counterclaim demanding that the transaction be declared null and void and the purchase price returned is properly dismissed.

*Finch* v. *Goldstein*, 217 App. Div. 707, affirmed.

(Argued May 13, 1927; decided May 31, 1927.)

Appeal from a judgment, entered September 9, 1926, upon an order of the Appellate Division of the Supreme Court in the third judicial department, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term and directing judgment in favor of plaintiff.

*Michael Gold, Homer I. Harris* and *Irving B. Feinberg* for appellant. Howard Finch having been committed under the provisions of the Insanity Law of the State

of New York, the order of commitment was an adjudication in itself of his inability to execute the deed in question, and the violation by the plaintiffs of a general order of the State Hospital Commission, in procuring the deed to be executed, made it a nullity entitling the defendant to judgment. (*Martello* v. *Cagliostro,* 122 Misc. Rep. 306; *Trerio* v. *Franklin Savings Bank,* 124 Misc. Rep. 38; *Hughes* v. *Jones,* 160 N. Y. 67; *McCarthy* v. *Bowling Green Storage & Van Co.,* 182 App. Div. 13; *Carter* v. *Beckwith,* 128 N. Y. 312; *Blinn* v. *Schwarz,* 177 N. Y. 252; *Smith* v. *Ryan,* 191 N. Y. 452; *Merry Realty Co., Inc.,* v. *Shamokin & Hollis Real Estate Co.,* 186 App. Div. 538; *Lasall* v. *Patti,* 25 Misc. Rep. 561.)

*George F. Kaufman* for respondents. The deed of Howard Finch before office found was not void but voidable. It could be avoided only at the election of said Howard Finch or his duly constituted representative. Howard Finch by his committee having elected to ratify the deed, it could not be avoided at the election of the defendant. (*Blinn* v. *Schwarz,* 177 N. Y. 252; *Smith* v. *Ryan,* 191 N. Y. 452; *Skinner* v. *Schwab,* 188 App. Div. 467; 229 N. Y. 549; *German Savings Bank* v. *Wagener,* 164 App. Div. 234; 220 N. Y. 608; *Jackson* v. *Gumaer,* 2 Cow. 552; *Bool* v. *Mix,* 17 Wend. 119; *Yates* v. *Lyon,* 61 N. Y. 344; *Wamsley* v. *Darragh,* 12 Misc. Rep. 199.)

CRANE, J. Howard Finch was the owner of a farm of 237 acres situated at Cairo, Greene county, New York, subject to the dower of his mother, Elsie Finch. He became mentally deranged and on September 16, 1920, was summarily committed to the Hudson River State Hospital for the insane at Poughkeepsie on an order of the county judge of Greene county pursuant to the provisions of section 80 of the Insanity Law (Cons. Laws, ch. 27).

Thereafter and on June 30, 1921, while still confined

in the State hospital, the said Howard Finch conveyed the property to the defendant in this case, David Goldstein, by deed duly executed, taking back a purchase-money mortgage which is being foreclosed in this action. The defendant knew that Finch had been committed as an insane person and that at the time of the conveyance he was confined in the hospital. The grantee entered into possession of the property and still retains the same.

On the 4th day of April, 1925, in proceedings duly instituted in the Supreme Court of this State, an inquisition was taken pursuant to the provisions of section 1356 of the Civil Practice Act, wherein said Howard Finch was adjudged an incompetent and incapable of handling his property, and Winnie Finch was thereupon appointed committee of his person and property and duly qualified. The committee brings this action ratifying the conveyance made by Howard Finch to the defendant and seeking a foreclosure of the purchase-money mortgage. The defendant has pleaded the insanity of Howard Finch at the time of the conveyance to him in a counterclaim wherein he asks that the transaction be declared null and void and his purchase price returned with interest.

If the deed made by Howard Finch while in the State hospital and before the appointment of the committee were void, the defendant is entitled to the relief asked for, passing the question of his estoppel. If the deed were only voidable at the election of the incompetent or his committee the plaintiff is entitled to foreclosure. What effect did the order of commitment of the county judge on the 16th day of September, 1920, have upon the capacity of Howard Finch to make the deed to the defendant before the inquisition and appointment of the committee.

This court said in *Blinn* v. *Schwarz* (177 N. Y. 252, at page 262): " Although the decisions of the courts upon the subject are not uniform, according to the weight of authority in this State, as well as elsewhere, the deed of a lunatic before office found is voidable only and not

void." Again in *Smith* v. *Ryan* (191 N. Y. 452) we followed this decision, saying: " The law is settled in this state that the deeds and contracts of a person of unsound mind, who has not been judicially declared incompetent, are voidable, not absolutely void * * *, and the same doctrine generally prevails throughout this country and in England."

What is meant in these decisions by " office found " or " judicially declared incompetent? " They have reference to proceedings under the Civil Practice Act for the appointment of a committee to take possession of and care for the property of an incompetent. Until the appointment of a committee neither the State nor any one else has any power or control over his property or any authority to act in his behalf. He alone remains in possession of his property and can dispose of it. If as a fact he be incompetent at the time he acts, his transactions may be set aside at his election either by himself or by a committee subsequently appointed. His acts before the appointment of a committee are thus voidable, not void.

The provisions of article 4 of the Insanity Law and those of article 81 of the Civil Practice Act have two distinct objects in view. Under the Insanity Law a person alleged to be insane may be committed to an institution for the custody and treatment of the insane upon an order made by a county judge or justice of the Supreme Court. The commitment is upon a certificate of lunacy made by two qualified medical examiners in lunacy, accompanied by a verified petition. The insane person may be committed to a State hospital or to the care and custody of a relative. He may be discharged by the superintendent of the State hospital on certifying to the State Commission that the patient has recovered, or the superintendent may grant a parole to the patient not exceeding six months. These general provisions of the Insanity Law indicate that its purpose is to care for

and treat the insane person and to protect his family and the public. These commitments at times, as we all know, must be made without delay. The law even dispenses with notice to the alleged incompetent in cases of necessity (Section 82). At other times the condition of the patient is not serious and discharge follows soon after commitment. The purpose of the Insanity Law is to look after the person of the incompetent and has nothing to do with his property except as it may be charged with the expense of his maintenance.

On the other hand the provisions of the Civil Practice Act (Sections 1356–1384) have relation to the property of the incompetent and the appointment of a committee to preserve it. Upon the presentation of a petition the court inquires by means of a jury or commission into the question of insanity and the property of the alleged incompetent. The finding of the jury or the commissioners is termed " an inquisition " (Section 1368), and upon it the court appoints a committee to take charge of the incompetent's property.

Having in view the provisions as well as the purposes of the Insanity Law and the Civil Practice Act it is quite apparent that when this court said that the deed of a lunatic before office found is voidable only, and not void, it meant by office found the inquisition resulting in the appointment of a committee under the provisions of the Civil Practice Act, and did not refer to the commitment of the person under the Insanity Law.

Further reasons may be found for this decision in the origin and history of article 81 of the Civil Practice Act as fully stated by this court in *Hughes* v. *Jones* (116 N. Y. 67) and in the opinions in *Sporza* v. *German Savings Bank* (192 N. Y. 8). (See, also, *Boschen* v. *Stockwell*, 224 N. Y. 356; *Matter of Dowdell*, 169 Mass. 387; *Wolcott* v. *Connecticut General Life Insurance Co.*, 137 Mich. 309; *Weeks* v. *Reliance Fertilizer Co.*, 20 Ga. App. 498; 93 S. E. Rep. 152; Williston on Contracts, sec. 257.)

The *Sporza* case is not an authority for the appellant's contention; it did not deal with the question here presented. The opinions discussed and decided the constitutionality of section 2323-a of the Code of Civil Procedure. The point was whether under our State Constitution a committee could be appointed without the question of incompetency being determined by a jury. The power of an incompetent to dispose of his property after commitment under the Insanity Law or the effect of such an act was not mentioned or passed upon.

For the reasons here stated the judgment appealed from should be affirmed, with costs.

Cardozo, Ch. J., Pound, Andrews, Lehman and O'Brien, JJ., concur; Kellogg, J., not sitting.

Judgment affirmed, etc.