Nathaniel T. Helman, J.
In an opinion dated April 30, 1962 (N. Y. L. J., May 3, 1962, p. 14, col. 6) I confirmed the findings of the jury which had found Harry Klein to be incompetent to manage himself and his property. Petitioners were directed to settle an order on notice which would provide, inter alia, for the appointment of the incompetent’s committee and the fixation of fees and allowances for services rendered by the special guardian, the attorneys for the petitioners and others. Petitioners’ proposed order was made returnable May 7,1962 but the alleged incompetent died on May 6, 1962.
Notwithstanding the intervening death of the alleged incompetent, it is now urged that I issue an order of confirmation and direct the payment of the proper fees and allowances.
As a general rule, there is no doubt that a special proceeding such as this abates upon the death of the alleged incompetent and the Supreme Court cannot thereafter acquire jurisdiction of the alleged incompetent’s property, nor direct the payment of fees and allowances from his estate. (Matter of Frank, 283 N. Y. 106.) Undoubtedly, the instant proceeding is somewhat unusual and perhaps distinguishable factually from the Frank case (supra) and other similar authorities, in that this proceeding had progressed to a point where the inquisition had been held, the unanimous finding of the jury that the decedent was incompetent had been filed, and the court had granted the motion to confirm these findings. All that remained to be done was to make the formal adjudication and appoint the committee.
However, it has never before been suggested that the court, even at this advanced stage of the proceeding, could appoint a committee subsequent to the death of the alleged incompetent. In the only case in New York (Matter of Lofthouse, 3 App. Div. 139) which approved the payment of the costs of the proceeding from the property of the alleged incompetent when, as in the instant proceeding, the inquisition had established the incompetency, but death occurred before formal confirmation and the appointment of the committee, the court ordered the executor of the estate (who had appeared generally in the proceeding) *623 to pay the various fees and disbursements allowed. It was held therein that, by the institution of the successful proceeding, the court obtained such jurisdiction of the property of the alleged incompetent as would authorize a direction for the payment of the costs of the proceeding. This case was decided some 30 years before the decision in Matter of Frank (283 N. Y. 106, supra) and I can find no indication that its reasoning on this point was ever followed. To the contrary, the Court of Appeals has emphatically stated (Matter of McGuinness, 290 N. Y. 117, 118): “ By statute, the custody of the person and the control and management of the property and affairs of an incompetent person and the use and disposition of his property are exclusively vested in the Supreme Court whose jurisdiction must be exercised by means of a committee appointed according to procedure provided in the Civil Practice Act (Civ. Prac. Act, §§ 1356-1358). There may be no interference with or disposition of his property until such jurisdiction is exercised and a committee appointed whose proceedings are subject continuously to proper and orderly supervision of the court (Matter of Schneider, 234 App. Div. 722; Matter of Rinn, 242 App. Div. 523; Finch v. Goldstein, 245 N. Y. 300; Matter of Frank, 283 N. Y. 106).” It is interesting to note that even in the Matter of Lofthouse (3 App. Div. 139, 144, supra) the court flatly stated: 1 ‘ Further proceedings, such as the appointment of a committee, were rendered impossible by the death of Thomas Lofthouse * * * [the alleged incompetent].”
The other cases submitted in support of petitioners ’ proposed order involve factually different matters and do not modify the rule enunciated in Frank, to wit, that the incompetency proceeding necessarily abated when the alleged incompetent died and that the court had no power to dispose of any of his property even to the extent of directing payment of the fees of the special guardian. Parenthetically, I have noted that the case most strongly relied on by applicants is Matter of Friedman (N. Y. L. J., June 5, 1941, p. 2528, col. 4). In this matter, Walters, J., thoroughly analyzed the import of the Court of Appeals ruling in Frank {supra), and decided that the court had the power to direct payment of fees to a special guardian and physician who had rendered valuable services to the incompetent, notwithstanding the fact that the proceeding abated upon the finding of the jury that the alleged incompetent was in fact competent. I am sure that this case was submitted in good faith but, unfortunately, it was reversed in Matter of Friedman (263 App. Div. 852). I, therefore, conclude that this court, under the circumstances herein, cannot issue the proposed order *624 and, except as hereinafter indicated, the proceeding must be considered terminated.
The special guardian appointed to protect the interests of the alleged incompetent acted in a highly commendable and efficient manner, and through his efforts in behalf of the decedent substantial funds were located and preserved. The attorney for the petitioner likewise rendered extensive and valuable service in protecting and preserving the property of the alleged incompetent. These services are a proper charge against the estate of the alleged incompetent (Matter of Heaton, 46 N. Y. S. 2d 165) and my determination in this matter is, of course, without prejudice to the right of any interested party to claim against the estate as a creditor who has rendered services beneficial to the deceased (Matter of Stern, 114 N. Y. S. 2d 17).
During the pendency of this proceeding, because of a dispute over the ownership of substantial funds and securities, I ordered that certain moneys be deposited in the account of the special guardian and enjoined the transfer of other funds and securities. These orders will continue in full force and effect until the executors of the decedent (or any other personal representative properly appointed by the Surrogate) make whatever applications they deem necessary for the expeditious transfer of these assets to the decedent’s estate.